UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ANTHONY J. DECARLIS,

246 East 77th Street, Apt. 7B

New York, New York 10075

anthony@cleartherecords.com

Plaintiff, Pro Se,

v.

COMPASS GROUP USA, INC.; BON APPÉTIT MANAGEMENT COMPANY;
RESTAURANT ASSOCIATES, INC.; UNION SQUARE EVENTS, LLC; THE FRICK
COLLECTION; CULTIVATEDNY; INTUIT, INC.; and HUDSON YARDS CATERING
LLC,

Defendants.

Civil Action No.: 1:26-cv-02950-UA

**JURY TRIAL DEMANDED**

**FIRST AMENDED COMPLAINT FOR DISCRIMINATION, RETALIATION,
WAGE REPORTING VIOLATIONS, FCRA VIOLATIONS, AND SPOLIATION**

## I. INTRODUCTION

1. This action arises from a pattern of unlawful discrimination, retaliation, wage reporting violations, and post-termination misconduct directed at Plaintiff Anthony J. DeCarlis, a non-binary individual, by Defendants Compass Group USA, Inc. and its wholly owned subsidiaries — including Bon Appétit Management Company, Restaurant Associates, Inc., Union Square Events, LLC, Hudson Yards Catering LLC, and CultivatedNY — as well as The Frick Collection and Intuit, Inc., which are independently liable for their respective roles in the discriminatory and retaliatory conduct described herein.

2. Plaintiff is a non-binary individual who uses they/them pronouns. Discrimination based on gender identity and non-binary status constitutes sex discrimination under Title VII of the Civil Rights Act of 1964. Bostock v. Clayton County, 590 U.S. 644 (2020). Plaintiff's gender identity and expression are protected characteristics under federal law, the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 292(34), and the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-107.

3. Plaintiff's direct supervisor at Bon Appétit Management Company, Katy Garcia-Moreno, made a discriminatory remark targeting Plaintiff's gender identity within days of learning Plaintiff's preferred pronouns, stating words to the effect of "This is why they should have hired a real man" while Plaintiff performed assigned duties. When Defendants subsequently attempted to reframe this remark as a comment about Plaintiff's physical capacity rather than gender identity, that recharacterization was both factually inaccurate and legally insufficient — a remark invoking what a "real man" should be able to do, made to a non-binary employee whose pronouns and gender identity were known, constitutes direct evidence of gender identity discrimination regardless of its ostensible subject matter.

4. When Plaintiff immediately objected and later reported the discriminatory conduct, Defendants retaliated by placing Plaintiff on administrative leave and terminating Plaintiff's employment within seven days of Plaintiff's protected report — citing four Class C work rule violations under their own progressive discipline policy, which requires written counseling before termination, without producing a single written counseling notice, performance improvement plan, or documented disciplinary record.

5. Defendants' retaliatory conduct did not end at termination. Following Plaintiff's EEOC filing, Compass Group USA, Inc. procured unauthorized post-termination consumer reports on Plaintiff, conducted a sham employment interview through its Restaurant Associates subsidiary timed to the declination of EEOC mediation, used language in that interview mirroring Plaintiff's EEOC charge allegations, reported wage data to the Department of Labor under fragmented subsidiary entities to suppress Plaintiff's unemployment benefits, and blocked Plaintiff's email communications through Compass Group's own corporate mail server when Plaintiff attempted to address those wage reports.

6. In their EEOC position statement, Defendants repeatedly mischaracterized Plaintiff's protected class as "sexual orientation" rather than gender identity and non-binary status — despite Plaintiff's charge clearly identifying the correct basis. This mischaracterization reflects either a failure to take Plaintiff's complaint seriously or a deliberate effort to reframe the protected activity.

7. The Frick Collection, which conducted an independent HR orientation for Plaintiff, whose institutional name was embedded in the official job titles of Plaintiff's supervisors, and whose Head of Human Resources received and acknowledged written notice of Plaintiff's EEOC charge and termination circumstances, is independently liable as a joint employer and aider and abettor under the NYCHRL for its deliberate failure to investigate or take remedial action.

8. Hudson Yards Catering LLC, a Compass Group-managed entity identified by public corporate filings as controlled by Compass Group USA, Inc., functioned as a mechanical payroll vehicle through which Compass Group routed Plaintiff's wages across subsidiary cost centers, suppressing Plaintiff's reportable wage base and defeating Plaintiff's entitlement to unemployment benefits. Hudson Yards Catering LLC is named as a direct defendant in this amended complaint. Plaintiff has requested a Right to Sue notice for Defendant Hudson Yards Catering LLC from the EEOC and is awaiting issuance. Upon receipt, it will be filed as a supplemental exhibit and incorporated by reference.

## II. JURISDICTION AND VENUE

9. This Court has jurisdiction under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq.

10. Federal question jurisdiction exists pursuant to 28 U.S.C. § 1331.

11. This Court has supplemental jurisdiction over related state and city law claims pursuant to 28 U.S.C. § 1367.

12. Venue is proper in this district because the events giving rise to these claims occurred in New York County, New York.

13. Plaintiff filed a charge with the EEOC on May 29, 2025 (EEOC No. 520-2025-05326).

14. The EEOC issued a Notice of Right to Sue on February 11, 2026.

15. This action was filed within ninety days of receipt of that notice. This First Amended Complaint is filed pursuant to Fed. R. Civ. P. 15(a).

## III. PARTIES

### A. Plaintiff

16. Plaintiff Anthony J. DeCarlis is a non-binary individual who uses they/them pronouns, residing at 246 East 77th Street, Apt. 7B, New York, New York 10075. Plaintiff is a member of a protected class within the meaning of Title VII, the NYSHRL, and the NYCHRL based on gender identity and expression.

### B. Defendants

17. Defendant Compass Group USA, Inc. ("Compass Group") is a corporation organized under the laws of the State of Delaware, with its principal place of business at 2400 Yorkmont Road, Charlotte, North Carolina 28217. Compass Group operates food service and hospitality businesses throughout the United States through a network of wholly owned subsidiaries including Bon Appétit Management Company, Restaurant Associates, Inc., Union Square Events, LLC, Hudson Yards Catering LLC, and CultivatedNY/Levy, among others. Compass Group maintains centralized human resources infrastructure — including its HR Advice and Guidance ("HRAG") function, centralized payroll systems, and The Work Number employment verification reporting

— used across all subsidiaries. Compass Group's own retained counsel confirmed in a January 6, 2026 letter that the firm represents "Compass Group USA, Inc., and its wholly owned subsidiaries ('the Company')," constituting an admission of unified corporate structure. Compass Group directly issued Plaintiff's payroll under all subsidiary employments, as confirmed by ACH payroll deposits identified as "COMPASS GROUP PAYROLL 10288365" and a final paycheck dated July 3, 2025, drawn from the "COMPASS GROUP USA, INC. PAYROLL ACCOUNT" at Bank of America, N.A.

18. Defendant Bon Appétit Management Company ("Bon Appétit") is a wholly owned subsidiary of Compass Group USA, Inc. Bon Appétit employed Plaintiff as a Catering Attendant at The Pantry, located at the Intuit, Inc. offices in New York, New York ("Intuit-NYC"), from on or about March 24, 2025 through April 15, 2025. The termination letter issued to Plaintiff was signed by Bon Appétit HR Manager Niasia Johnson and issued on Bon Appétit letterhead under the designation "Bon Appétit — Intuit NYC." At all relevant times, Bon Appétit shared HR infrastructure, payroll systems, employee handbooks signed by Compass Group's CEO and Chief People Officer, and legal representation with Compass Group USA, Inc.

19. Defendant Restaurant Associates, Inc. ("Restaurant Associates") is a wholly owned subsidiary of Compass Group USA, Inc. On or about May 7, 2025, Plaintiff received an offer of employment issued through Compass Group's centralized talent acquisition system identifying the employing entity as "Restaurant Associates, a member of Compass Group USA, Inc. (collectively, the 'Company')" — explicitly treating Restaurant Associates and Compass Group as a single employer. Restaurant Associates subsequently engaged in post-termination retaliatory conduct against Plaintiff as described herein. Restaurant Associates' email infrastructure operates through Compass Group's corporate mail servers, as confirmed by the generating server identification "corwpexc6337.NA.CompassGroup.Corp" appearing in email bounce notifications directed at Restaurant Associates email addresses.

20. Defendant Union Square Events, LLC ("Union Square Events" or "USE") is a subsidiary or affiliated entity of Compass Group USA, Inc. Union Square Events administered Plaintiff's onboarding beginning on or about May 19, 2025, employed Plaintiff at Westmoreland at The Frick Collection in New York, New York, and was responsible for Plaintiff's supervision, discipline, suspension, and termination. Zachary Goldstein, General Manager, Westmoreland at The Frick Collection — Union Square Events, issued Plaintiff's termination paperwork including the NY DOL Record of Employment bearing Federal Employer Identification Number 42-1651083. Despite being identified as Plaintiff's employer of record for termination purposes, Union Square Events reported zero wages to the New York State unemployment insurance system for the entire period of Plaintiff's employment.

21. Defendant The Frick Collection ("The Frick") is a nonprofit cultural institution located at 1 East 70th Street, New York, New York 10021. The Frick Collection exercised independent employer authority over the terms and conditions of Plaintiff's employment sufficient to establish joint employer status under the NYCHRL and applicable federal law. Specifically: (a) The Frick conducted an independent HR orientation for Plaintiff covering sexual harassment and workplace conduct policies,

separate from and in addition to the Union Square Events orientation; (b) The Frick's institutional name was embedded in the official titles of both of Plaintiff's direct supervisors — Zachary Goldstein (General Manager, Westmoreland at The Frick Collection — Union Square Events) and Emily Lew (Restaurant Manager, Westmoreland at The Frick Collection — Union Square Events); (c) the termination allegation arose from conduct on The Frick's premises; and (d) Nate Skaggs, Head of Human Resources at The Frick Collection, received written notice of Plaintiff's termination, the pretextual allegation, and Plaintiff's active EEOC charge on or about January 21, 2026, acknowledged receipt, and took no investigative or remedial action.

22. Defendant CultivatedNY operates hospitality services in New York, New York, including at the Javits Center. CultivatedNY administered a Compass-affiliated hiring process with Plaintiff under the Levy brand — identified in the offer letter as "Levy, a member of Compass Group USA, Inc." — through which a written offer of employment was extended and subsequently withdrawn after Plaintiff disclosed their pending EEOC charge during onboarding. CultivatedNY's onboarding was administered through Compass Group North America's proprietary SAP SuccessFactors CGNA system and processed under Plaintiff's existing Compass Employee ID 10288365.

23. Defendant Intuit, Inc. ("Intuit") is a corporation organized under the laws of the State of Delaware, with its principal place of business in Mountain View, California, and operating offices in New York, New York, including at the Intuit-NYC location where Plaintiff performed work as a Catering Attendant under Bon Appétit Management Company. At all relevant times, Intuit exercised supervisory authority over the premises and day-to-day working conditions of Plaintiff, received direct notice of gender identity discrimination through its own managerial personnel on April 8, 2025 — one week before Plaintiff's termination — and participated in the post-termination process through its Ethics and Investigations function. Intuit is named as a defendant pursuant to NYCHRL § 8-107(6) for aiding and abetting the discriminatory and retaliatory conduct of Bon Appétit Management Company, and under joint employer theories supported by operational integration and shared management infrastructure.

24. Defendant Hudson Yards Catering LLC ("HYC") is a limited liability company organized under the laws of the State of New York, EIN 42-1651083, with its principal place of business at 853 Broadway, 17th Floor, New York, NY 10003. According to public records filed with the Florida Division of Corporations, Compass Group USA, Inc. — the parent defendant in this action — is listed as the Manager of Hudson Yards Catering LLC, sharing the same principal address at 2400 Yorkmont Road, Charlotte, NC 28217. At all relevant times, HYC functioned as a mechanical payroll vehicle through which Compass Group routed Plaintiff's wages to fragment Plaintiff's employment record, suppress Plaintiff's reportable earnings, and obstruct Plaintiff's entitlement to unemployment benefits and wage-based relief. Plaintiff has requested a Right to Sue notice for Defendant Hudson Yards Catering LLC from the EEOC and is awaiting issuance.

## IV. INTEGRATED ENTERPRISE, JOINT EMPLOYER, AND SINGLE EMPLOYER ALLEGATIONS

25. The following documentary evidence, generated by Defendants themselves, establishes integrated enterprise status beyond reasonable dispute.

26. Compass Group's own retained counsel confirmed in a January 6, 2026 letter that Gardner Skelton PLLC represents "Compass Group USA, Inc., and its wholly owned subsidiaries ('the Company')" — treating all subsidiaries as a single entity for purposes of legal representation and defense of Plaintiff's EEOC charge.

27. Plaintiff's bank records demonstrate that every payroll deposit across both their Bon Appétit employment and their Union Square Events employment was issued directly by Compass Group USA, Inc. ACH deposits appeared as "COMPASS GROUP PAYROLL 10288365" on April 1, April 8, April 15, and April 22, 2025. Plaintiff's final paycheck was a physical check dated July 3, 2025, drawn from the "COMPASS GROUP USA, INC. PAYROLL ACCOUNT" at Bank of America, N.A., in the amount of $1,032.82. Plaintiff's employee identification number — 10288365 — remained constant across both employments and both subsidiary entities.

28. Compass Group's payroll team confirmed in a February 11, 2026 written communication that Plaintiff's wages were routed through two separate subsidiaries based solely on internal cost center assignments — Bon Appétit Management Company for cost center 68201 (March 24 through May 18, 2025) and Hudson Yards Catering LLC for cost center 68638 (May 19, 2025 onward) — and acknowledged that "for audit purposes, I would think the auditor would need to know he worked for two different entities." This admission confirms internal routing of wages through interchangeable subsidiaries.

29. Despite Union Square Events issuing Plaintiff's termination paperwork under FEIN 42-1651083, and despite Compass Group issuing Plaintiff's final paycheck directly, both entities reported zero wages to the New York State unemployment insurance system for Plaintiff's entire Union Square Events employment period. This is confirmed by Plaintiff's official NY DOL Monetary Benefit Determination, which reflects $0.00 in wages from both entities, directly causing denial of Plaintiff's unemployment benefits.

30. Plaintiff's first paycheck from Union Square Events improperly reflected year-to-date wage figures carried over from Plaintiff's prior Bon Appétit employment, falsely merging wages from two nominally separate employers into a single payroll record and resulting in inaccurate reporting to government agencies.

31. All of Plaintiff's Compass Group employment records appear under a single Compass Group umbrella in The Work Number employment verification system, regardless of which subsidiary nominally employed Plaintiff — confirming that Defendants maintain unified employment records while simultaneously arguing subsidiary independence for purposes of liability.

### A. Common Ownership and Management — Public Record

32. Florida Division of Corporations public filings establish that Compass Group USA, Inc. is the Manager of Hudson Yards Catering LLC, sharing the same principal address at 2400 Yorkmont Road, Charlotte, NC 28217. Bon Appétit Management Company

and Restaurant Associates, Inc. are wholly owned subsidiaries of Compass Group USA, Inc., operating under its corporate umbrella with unified executive leadership.

### B. Centralized Control of Labor Relations — Employee ID and Payroll

33. Compass Group's use of a single Employee ID — 10288365 — assigned to Plaintiff in 2023 and carried continuously across Bon Appétit, Hudson Yards Catering, and CultivatedNY onboarding demonstrates centralized control of labor relations across nominally distinct entities. Plaintiff's wages across multiple defendant entities were reported to the New York State Department of Labor under a single FEIN — 42-1651083 — registered to Hudson Yards Catering LLC, regardless of which subsidiary entity nominally employed Plaintiff at any given time.

### C. Interrelated Operations — The DOL Form Conflict

34. The interrelated nature of Defendants' operations is confirmed by the DOL Record of Employment (Form IA 12.3) signed by Union Square Events General Manager Zachary Goldstein on July 16, 2025. That document bears Hudson Yards Catering's FEIN — 42-1651083 — while listing Union Square Events' Brooklyn address — 147 41st Street, Floor 4, Brooklyn, NY 11232 — as the reporting address. The use of one entity's tax identification number under another entity's address, signed by a manager of a third entity, reflects the documented architecture of a payroll fragmentation arrangement spanning multiple Compass-affiliated defendants.

### D. Shared HR Infrastructure — SAP SuccessFactors CGNA

35. CultivatedNY's onboarding of Plaintiff was conducted through Compass Group North America's proprietary SAP SuccessFactors CGNA system, as evidenced by onboarding emails transmitted from the no-reply.CGNA@online-onboarding.com domain. Plaintiff's onboarding profile was created under Employee ID 10288365 — the same Compass Group Employee ID assigned to Plaintiff since 2023. Independent employers do not onboard prospective employees under a prior employee's existing ID in another company's proprietary HR system. This establishes that Compass Group exercised operational control over CultivatedNY's hiring process and maintained unified employee tracking across nominally independent brands.

36. Taken together, these facts establish that the named Compass-affiliated defendants constitute a single employer for purposes of Title VII, the NYCHRL, and the New York Labor Law, and that Plaintiff's employment relationships across those entities must be aggregated for purposes of liability, damages, and wage reporting obligations.

---

## V. FACTUAL BACKGROUND

### A. Plaintiff's Protected Class and Employment at Bon Appétit

37. Plaintiff identifies as non-binary and uses they/them pronouns.

38. Bon Appétit hired Plaintiff on or about March 24, 2025 as a Catering Attendant at The Pantry, located at the Intuit-NYC offices in New York, New York.

39. Plaintiff reported directly to Catering Services Manager Katy Garcia-Moreno. Garcia-Moreno maintained both a Bon Appétit email address (Katy.Garcia-moreno@cafebonappetit.com) and an Intuit corporate email address (katy_garciamoreno@intuit.com), demonstrating Intuit's operational integration with Bon Appétit's management structure and directly contradicting Defendants' EEOC position statement characterization of Bon Appétit and Intuit as maintaining an arm's-length relationship.

40. Plaintiff's gender identity and preferred pronouns were communicated to and known by Katy Garcia-Moreno at the time of the events described herein.

41. From the commencement of their employment, Plaintiff performed their duties professionally and received positive recognition. On or around April 1, 2025, the Intuit Office Manager introduced herself to Plaintiff. Her demeanor was kind, welcoming, and enthusiastic, expressing that she was pleased to have Plaintiff as part of the team. She indicated that she had been reading positive feedback about Plaintiff's performance on Intuit's internal Slack platform and had reviewed Plaintiff's outstanding QR survey results. This unsolicited acknowledgment from a client-side management representative established that Plaintiff's performance was visibly documented, actively circulated, and affirmatively praised within the workplace at that time.

## B. Discriminatory Remark and Immediate Protected Opposition

42. On or about March 28, 2025, while Plaintiff was performing assigned work duties — specifically lifting buffet chafers — Katy Garcia-Moreno stated words to the effect of: "This is why they should have hired a real man." This remark was made with knowledge of Plaintiff's non-binary gender identity and preferred pronouns, and was directed at Plaintiff based on Plaintiff's gender identity and expression.

43. Plaintiff immediately and directly objected to Garcia-Moreno's comment on the spot, informing her that the remark was offensive, unwelcome, and disrespectful given her awareness of Plaintiff's pronouns and gender identity. Garcia-Moreno dismissed Plaintiff's objection, stating she did not care. This contemporaneous objection constitutes protected activity under Title VII, the NYSHRL, and the NYCHRL, and placed Garcia-Moreno on direct and immediate notice that Plaintiff found the conduct discriminatory.

44. In their EEOC position statement, Defendants advanced three irreconcilable positions regarding the March 28, 2025 comment: first asserting that the comment was never made; then offering in the same document an alternative innocent explanation for what was said; and then, on April 10, 2025, having Katy Garcia-Moreno characterize the comment as a joke in the presence of HR. A party cannot simultaneously deny that a statement was made, explain what the statement innocently meant, and admit the statement was a joke. These three contradictory positions constitute consciousness of guilt and demonstrate that Defendants' denial of discriminatory conduct is not credible.

45. Following Plaintiff's objection, Garcia-Moreno subjected Plaintiff to heightened scrutiny, micromanagement, hostility, and differential treatment not applied to other employees. Garcia-Moreno also deliberately underordered supplies for Plaintiff's workstation — creating chronic understocking conditions — the very condition

subsequently cited as a performance deficiency. Plaintiff documented their workstation conditions through timestamped photographs and video recordings before and after each shift.

## C. Plaintiff's Protected Disclosure and the Coordinated Retaliatory Response

46. On or about April 8, 2025, as Plaintiff was leaving the Intuit building at the end of their shift, the Intuit Office Manager approached Plaintiff and asked if they were okay because they did not seem their usual happy self. Plaintiff disclosed to the Intuit Office Manager the harassment and discrimination they had been experiencing, including the discriminatory conduct and gender identity-based slurs directed at them by their direct supervisor Katy Garcia-Moreno. The Intuit Office Manager responded sympathetically, stating words to the effect of "that isn't right." Plaintiff did not seek out the Intuit Office Manager — she initiated contact. Plaintiff documented this fact in a contemporaneous email to Niasia Johnson sent on or about April 15, 2025.

47. On or about April 9, 2025, Plaintiff observed the Intuit Office Manager engaged in a private conversation with Garcia-Moreno. This conversation occurred the day after Plaintiff's protected disclosure and the day before Plaintiff was suspended — evidence that Garcia-Moreno learned of Plaintiff's disclosure and the retaliatory response followed.

48. The sequence of events is confirmed by Dorna Zaboli, Ethics and Investigations at Intuit (dorna_zaboli@intuit.com), who wrote to Plaintiff on or about June 9, 2025 stating that Intuit had "notified Bon Appétit, the company that employed you and your manager, about your concerns" and that "they will be using their internal processes to review and investigate this concern." This written communication confirms that Intuit transmitted Plaintiff's April 8 protected disclosure to Bon Appétit management on May 30, 2025 — one day after Plaintiff filed the EEOC charge — creating a documented chain between Plaintiff's protected activity and the adverse actions that followed.

49. Intuit's claimed inability to identify the Office Manager who initiated contact with Plaintiff stands in direct and irreconcilable conflict with Defendants' own EEOC Position Statement, in which Defendants quoted Plaintiff's EEOC charge language referencing the April 8, 2025 conversation and responded to it substantively — demonstrating that Defendants knew the identity of the Office Manager while simultaneously allowing Intuit to represent to Plaintiff that she could not be identified.

## D. Adverse Actions Following Protected Activity — Bon Appétit Track

50. On or about April 10, 2025, Plaintiff was summoned to a meeting with Garcia-Moreno and HR Manager Niasia Johnson. During that meeting, Plaintiff reported directly to Niasia Johnson the discriminatory conduct and gender identity-based slurs Plaintiff had been subjected to, including the specific comment made by Katy Garcia-Moreno on March 28, 2025. Rather than initiating any investigation or remedial action, Garcia-Moreno characterized the remark as a joke — constituting an on-the-record admission in the presence of HR. HR Manager Niasia Johnson took no corrective action. Instead, the meeting was immediately redirected, and Defendants informed Plaintiff that the basis for the adverse action was Plaintiff's conversation with the Intuit Office Manager

on April 8, 2025 — characterizing Plaintiff's protected disclosure as a terminable work rule violation.

51. The inclusion of Gary Gibson as a signatory on Plaintiff's administrative leave notice, despite Gibson having never met Plaintiff and having no direct supervisory relationship with Plaintiff, demonstrates that the adverse action was coordinated at a supervisory level above Plaintiff's direct chain — undercutting any inference of independent legitimate judgment. Garcia-Moreno's presence as a signatory on this notice — the same supervisor whose discriminatory conduct Plaintiff had reported — constitutes evidence of retaliatory motive and supports liability under the cat's paw doctrine. See Staub v. Proctor Hospital, 562 U.S. 411 (2011). Garcia-Moreno's discriminatory animus was the proximate cause of the suspension and termination regardless of whether Gibson or Rotundo harbored independent discriminatory intent.

52. On April 10, 2025, Plaintiff was placed on paid administrative leave. The administrative leave notice was signed by Garcia-Moreno, Resident District Manager Jill Rotundo, Resident District Manager Gary Gibson, and HR Manager Niasia Johnson. The involvement of two Resident District Managers in the suspension of a single frontline hourly Catering Attendant is facially inconsistent with routine supervisory practice and reflects a level of institutional coordination disproportionate to any legitimate performance concern.

53. On or about April 15, 2025 — just seven days after Plaintiff's protected report — Niasia Johnson emailed Plaintiff a termination letter citing four Class C work rule violations. Defendants thus terminated Plaintiff for offenses that their own written policy designates as subject to progressive counseling, not immediate discharge — in direct contravention of the policies Defendants themselves submitted into the official EEOC record. The complete circumvention of the progressive discipline policy demonstrates that the stated grounds for termination were pretextual.

54. The termination letter was signed by Garcia-Moreno and issued under the designation "Bon Appétit — Intuit NYC" — establishing that the termination was executed under joint institutional authority of both Bon Appétit and Intuit.

### E. EEOC Filing and Defendants' Response

55. Plaintiff filed an EEOC discrimination and retaliation charge on May 29, 2025 (No. 520-2025-05326).

56. Defendants submitted a position statement through counsel at Gardner Skelton PLLC dated July 30, 2025, repeatedly mischaracterizing Plaintiff's protected class as "sexual orientation" rather than gender identity and non-binary status.

57. On or about January 6, 2026, Jennifer Otis, Esq. of Gardner Skelton PLLC sent correspondence to Plaintiff directing Plaintiff to cease all contact with Compass Group and its affiliates and threatening legal action. None of Plaintiff's requests constituted a settlement demand — each concerned correction of employment records, wage reporting accuracy, and compliance with government reporting obligations. The use of legal counsel to threaten a pro se claimant into ceasing protected communications with government agencies constitutes retaliation.

### F. *Plaintiff's Employment with Union Square Events at The Frick Collection*

58. On or about May 7, 2025, Plaintiff received an offer of employment issued through Compass Group's talent acquisition system for the position of Host/Hostess with Restaurant Associates, a member of Compass Group USA, Inc. The offer identified Zachary Goldstein as Plaintiff's reporting supervisor and confirmed a start date of May 19, 2025 at $23.00 per hour. The offer letter expressly identified both Restaurant Associates and Compass Group as 'collectively, the Company.'

59. On or about May 19, 2025, Plaintiff attended onboarding administered under Union Square Events branding at Westmoreland at The Frick Collection. During onboarding, Plaintiff attended two separate HR orientations: one conducted by Union Square Events, LLC, and a separate, independent orientation conducted by The Frick Collection covering sexual harassment and workplace conduct policies. The existence of two separate HR orientations reflects The Frick Collection's exercise of independent HR authority over workers at its premises.

60. Plaintiff's direct supervisors were Zachary Goldstein, whose signature block identified him as "General Manager, Westmoreland at The Frick Collection — Union Square Events," and Emily Lew, whose signature block identified her as "Restaurant Manager, Westmoreland at The Frick Collection — Union Square Events." Both supervisors' official titles embedded The Frick Collection's institutional name, demonstrating operational integration between Union Square Events and The Frick.

### G. *Manufactured Discipline, Defamatory Allegations, and Second Retaliatory Termination — USE / Westmoreland at The Frick*

61. Beginning on or about June 7, 2025, Plaintiff reported in writing to Zachary Goldstein, General Manager at Westmoreland at The Frick Collection, that Plaintiff's employee login ID was not functioning and that Plaintiff was unable to access the scheduling application to view assigned shift times. Plaintiff requested that Goldstein fix the issue or direct Plaintiff to someone who could. Goldstein did not resolve the system access issue. Plaintiff followed up in writing on June 12, 2025. No corrective action was taken.

62. On or about June 9, 2025, Plaintiff separately submitted Work Order WO0000001478341 to Compass Group Support regarding the continued use of Plaintiff's former employee ID number (10288365), which remained active in Compass systems despite Plaintiff's April 2025 termination from Bon Appétit. Compass Group's HR Advice and Guidance function responded in writing, closing the case without resolution and directing Plaintiff to escalate system and onboarding concerns to manager Zachary Goldstein — the same individual who had failed to resolve the system access failure.

63. Because Plaintiff could not independently access the scheduling system, Plaintiff relied on verbal shift times communicated directly by Goldstein. When Plaintiff reported to work at the time Goldstein specified, Goldstein informed Plaintiff that Plaintiff was late and initiated disciplinary proceedings based on that lateness. The lateness write-up was a direct and foreseeable consequence of a system access failure that Goldstein himself had been notified of in writing and had failed to correct.

64. On or about late June 2025, while Plaintiff was employed at Westmoreland, Defendants presented Plaintiff with an allegation that Plaintiff had been under the influence of drugs or alcohol during a shift. Plaintiff immediately and directly offered to submit to a drug test and breathalyzer on the spot. Defendants refused to administer either. Defendants' own Associate Handbook grants management the express right to conduct reasonable suspicion drug testing. Despite having both the policy authority to test and Plaintiff's explicit contemporaneous consent, Defendants declined to administer any test, conduct any locker search, or produce any investigation findings. Defendants thereafter relied on the unsubstantiated allegation as a basis for termination. The refusal to administer objective testing when Plaintiff had affirmatively and voluntarily offered to submit to it is inconsistent with a good faith investigation and establishes that the allegation was pretextual.

65. In or around late June 2025, Defendants Union Square Events, LLC, through its agents Zachary Goldstein, General Manager, and Ryan Mills, Human Resources Director, published false statements about Plaintiff to third parties, specifically: (a) that Plaintiff had made racist remarks to or about a coworker or guest; and (b) that Plaintiff had warned a manager not to be left alone with a specific female employee because that employee would "claim rape." Both statements are false. Plaintiff never made either statement. When Plaintiff learned of the accusations they immediately denied them in writing and offered to cooperate with any investigation. No investigation was conducted. The statements were published without reasonable investigation, without corroborating evidence, and without affording Plaintiff any opportunity to respond prior to termination.

66. On July 1, 2025 — thirty-three days after Plaintiff filed their EEOC charge on May 29, 2025 — Defendants presented Plaintiff with an Associate Counseling Report prepared by Human Resources Director Ryan Mills and witnessed by General Manager Zachary Goldstein. The report alleged that Plaintiff had offered a coworker cocaine and made abusive statements during a shift. The report checked "Discharge" as the action taken, bypassing all three prior progressive discipline steps in direct violation of Defendants' own stated progressive discipline policy.

67. The "Signature of Associate" line on the July 1 counseling report is blank. The "Associate's Response to This Discussion" section is also blank. Plaintiff was not afforded the opportunity to provide a written response, and the report was completed and used to effectuate Plaintiff's discharge without Plaintiff's acknowledgment or signature.

68. Zachary Goldstein appears in this sequence in three distinct roles: as the manager to whom Plaintiff reported the scheduling system failure in writing; as the manager HR A&G directed Plaintiff to escalate concerns to; and as the witness who signed the discharge counseling report. Goldstein's participation across all three roles — creating the conditions for manufactured lateness discipline, receiving HR's referral of Plaintiff's complaints, and signing the discharge document — supports a strong inference of coordinated retaliatory conduct and deprived Plaintiff of any neutral review.

69. On July 2, 2025, Plaintiff was terminated by Union Square Events. The termination notice was issued on Compass Group letterhead and signed by Zachary Goldstein on July 16, 2025 — fourteen days after the stated termination date. Plaintiff's NY DOL Record of Employment was also issued on July 16, 2025, bearing Union Square Events' name and FEIN 42-1651083. The two-week gap between termination and paperwork, combined with zero wage reporting to unemployment authorities, reflects post-termination administrative conduct that compounded the harm to Plaintiff.

70. Plaintiff's termination from Union Square Events occurred thirty-three days after Plaintiff filed their EEOC charge on May 29, 2025 — a period of temporal proximity that supports a strong inference of retaliatory motive.

### H. The Frick Collection's Joint Employer Status and Notice

71. On or about January 21, 2026, Plaintiff sent written correspondence to Nate Skaggs, Head of Human Resources at The Frick Collection (skaggs.nate@frick.org), providing formal notice of: the unsubstantiated drug allegation against Plaintiff; Plaintiff's on-the-spot demand for a drug test and breathalyzer that Defendants refused to administer; the complete absence of any testing, medical evaluation, or formal investigation; and the proximity of the termination to Plaintiff's active EEOC charge. Mr. Skaggs acknowledged receipt of this communication.

72. On or about February 4, 2026, Plaintiff transmitted to Mr. Skaggs a formal written communication enclosing written confirmation from Experian Verify that all of Plaintiff's employment and income records are generated and controlled solely under Compass Group systems — directly contradicting Compass Group's prior EEOC position statement. Mr. Skaggs acknowledged receipt. The Frick Collection took no investigative or remedial action following either the January 21 or February 4 communications — constituting deliberate indifference to documented discriminatory and retaliatory conduct occurring on its own premises.

### I. Post-Termination Retaliation — Restaurant Associates Sham Interview and Blacklisting

73. On or about July 17, 2025 — approximately contemporaneous with Compass Group's declination of EEOC mediation — Morgan Elzey, a recruiter employed by Restaurant Associates, Inc. (MElzey@restaurantassociates.com), contacted Plaintiff regarding a Customer Ambassador position. During the initial phone call, Mr. Elzey emphasized that the role would involve "no micromanagement" — language directly mirroring the discriminatory conduct described in Plaintiff's active EEOC charge.

74. On or about July 25, 2025, Plaintiff attended an in-person interview at Restaurant Associates' offices. Despite prior representations that higher-level management would be present, no higher-ups attended. Shortly after the interview, Mr. Elzey informed Plaintiff that "our client has decided to go a different direction with the role" and that the requisition had been closed.

75. On or about February 2, 2026, Plaintiff sent correspondence to Mr. Elzey concerning Restaurant Associates' reporting of wages to the Department of Labor under Plaintiff's Compass Group employee identification number, for work Plaintiff never performed for Restaurant Associates. This email was rejected by Compass Group's corporate mail server — corwpexc6337.NA.CompassGroup.Corp — with the error: "Recipient

address rejected: Access denied." The same communication sent from an alternate email address was successfully delivered, confirming the blocking was targeted at Plaintiff specifically. This deliberate blocking of Plaintiff's communications with a Compass Group subsidiary constitutes post-termination retaliation.

### J. Compass Group's Unauthorized Post-Termination Background Checks

76.  On July 15, 2025 — thirteen days after Plaintiff's termination by Union Square Events — and again on July 23, 2025 — Compass Group procured consumer reports on Plaintiff through Checkr. At each of these times, Plaintiff was neither a current employee nor an applicant for employment with any Compass Group entity and had not authorized any such background check. Checkr confirmed in writing that the July 15, 2025 background check was unauthorized and canceled it. Again in March 2026, and on April 2, 2026 through Certiphi Screening, Inc. d/b/a Application Station (Truescreen), additional unauthorized consumer reports were procured on Plaintiff after consent withdrawal.

77.  Compass Group's failure to deactivate Plaintiff's Employee ID 10288365 following termination is the operational mechanism that enabled continued unauthorized access to Plaintiff's consumer reports. SAP SuccessFactors maintained Plaintiff's active profile; Checkr was separately accessed by Compass personnel with knowledge of both systems. The combination establishes human decision-making — not automated system behavior — behind each unauthorized pull. There is no legitimate HR or business purpose for a former employer to run background checks on a terminated employee who has a pending EEOC charge.

### K. Wage Misreporting and Unemployment Insurance Impact

78.  Plaintiff's NY DOL Monetary Benefit Determination reflects that Plaintiff did not meet the earnings required to qualify for unemployment benefits because $0.00 wages were attributed to the entities that actually employed Plaintiff — Union Square Events and Compass Group — while wages were instead attributed to Hudson Yards Catering LLC, an entity Plaintiff never directly worked for. Compass Group's own payroll team confirmed this routing in writing on February 11, 2026.

79.  The DOL Record of Employment (Form IA 12.3) signed by Union Square Events General Manager Zachary Goldstein on July 16, 2025 bears Hudson Yards Catering's FEIN — 42-1651083 — while listing Union Square Events' Brooklyn address — 147 41st Street, Floor 4, Brooklyn, NY 11232 — as the reporting address. This conflict between entity name, signatory, address, and tax identification number in a single government document reflects the payroll fragmentation arrangement Defendants maintained across multiple entities.

80.  Plaintiff's Work Number report showed all 2025 employment reported under Hudson Yards Catering LLC's FEIN, with no Bon Appétit wages appearing in the report. Plaintiff filed a formal dispute with Equifax Workforce Solutions (Case No. 32831291) in February 2026. The dispute remains unresolved. As of the date of this filing, the wage reporting discrepancies remain entirely unresolved, causing continuing and ongoing financial harm to Plaintiff.

81. Plaintiff's prior unemployment claim — effective September 16, 2024, with a weekly benefit rate of $154.00 — was approved based on total base period wages of $9,411.55. This prior approved claim demonstrates that Plaintiff was an active workforce participant with a documented earnings history, and that the failure of Plaintiff's 2025 claim was caused by Defendants' wage misreporting, not by any absence of qualifying employment.

### L. Retaliation During Subsequent Hiring — CultivatedNY/Levy

82. On July 15, 2025, Plaintiff received a formal written offer of employment for the position of Attendant, Catering with Levy, identified in the offer letter as "a member of Compass Group USA, Inc.," specifying a start date of July 19, 2025 and an initial pay rate of $27.21 per hour.

83. The offer was processed through Compass Group North America's proprietary SAP SuccessFactors CGNA onboarding system, as evidenced by onboarding emails transmitted from the no-reply.CGNA@online-onboarding.com domain. Plaintiff's onboarding profile was created under Employee ID 10288365 — the same Compass Group Employee ID assigned to Plaintiff since 2023 and used continuously across Bon Appétit, Hudson Yards Catering, and prior Compass-affiliated engagements.

84. During onboarding, Plaintiff disclosed their pending EEOC charge and requested clarification regarding a mandatory arbitration clause. Approximately four days after this disclosure, the employment offer was withdrawn. The withdrawal of a written, signed offer of employment following disclosure of protected EEOC activity constitutes retaliation against a prospective employee. Burlington Northern & Santa Fe Ry. Co. v. White, 548 U.S. 53 (2006).

85. Following the rescission, Plaintiff's onboarding records were deleted from the Compass CGNA SuccessFactors system. At the time of deletion, Compass Group was on notice of Plaintiff's EEOC charge, which had been filed and disclosed to Compass prior to the deletion. The duty to preserve litigation-relevant records attached no later than the date of that disclosure. The deletion of onboarding records — including the Employee ID linkage, background check initiation data, and offer documentation stored within Compass's own HR infrastructure — constitutes spoliation of evidence.

### M. Retaliation by Aramark/Lifeworks — Background Evidence Only

86. The events involving Aramark Services, Inc. d/b/a Lifeworks Restaurant Group are included solely as background evidence of the downstream effects of Defendants' conduct and the resulting interference with Plaintiff's subsequent employment opportunities, and not as independent claims against a named party. In or about October 2025, Plaintiff was recruited by Evan LaSpina, Vice President of Operations of Lifeworks Restaurant Group, for a position at JPMorgan Chase's executive dining facilities. Plaintiff worked the week of October 28 through November 1, 2025. On November 3, 2025 — seven days after LaSpina reviewed Plaintiff's background check reflecting their Compass employment history — Plaintiff was terminated by telephone without written notice, prior written discipline, or specific documentation.

### N. Plaintiff's Documented Mental Health Damages

87. As a direct and proximate result of Defendants' discriminatory and retaliatory conduct, Plaintiff commenced outpatient psychotherapy at Second Chance Counseling PLLC on May 18, 2025. A Verification of Treatment letter issued by Second Chance Counseling PLLC, signed by Licensed Master Social Worker Krystal Findley, dated July 9, 2025, confirms that Plaintiff has been receiving treatment for Major Depressive Disorder and Generalized Anxiety Disorder since that date. The onset of formal clinical treatment for these diagnosed conditions immediately following the adverse employment actions establishes a direct causal connection between Defendants' discriminatory and retaliatory conduct and Plaintiff's documented mental health injuries.

88. Defendants have been on actual notice of Plaintiff's mental health condition and its causal relationship to their conduct through multiple documented channels. Every adverse action taken after May 2025 was therefore taken with full knowledge that Defendants' conduct was actively worsening Plaintiff's diagnosed conditions.

89. Approximately three months prior to the filing of the original complaint, Plaintiff's licensed medical provider determined that outpatient psychotherapy alone was no longer sufficient to manage Plaintiff's symptoms and prescribed medication to treat Plaintiff's Major Depressive Disorder and Generalized Anxiety Disorder. The escalation from therapy alone to a combined treatment regimen represents a documented clinical deterioration directly corresponding to the period of Defendants' continued obstruction.

## VI. ARBITRATION AGREEMENT — GROUNDS FOR NON-ENFORCEMENT

90. To the extent Defendants contend that any arbitration agreement covers the claims asserted herein, Plaintiff asserts that such agreement is unenforceable on six independent grounds.

91. First, the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2022 ("EFAA"), 9 U.S.C. § 401 et seq., renders pre-dispute arbitration agreements unenforceable as applied to claims of sexual harassment and related retaliation. Plaintiff's gender identity discrimination claims arise from and are intertwined with the sexual harassment framework addressed by the EFAA.

92. Second, the arbitration agreement itself contains a carve-out at Section 4(e) for sexual harassment claims, which independently excludes Plaintiff's claims from arbitration.

93. Third, Plaintiff was terminated before completing the onboarding process and before being afforded a meaningful opportunity to opt out of the arbitration agreement. Defendants' own retaliatory conduct deprived Plaintiff of the opt-out right.

94. Fourth, the agreement is a contract of adhesion presented on a take-it-or-leave-it basis as a condition of employment, with no meaningful opportunity to negotiate its terms, rendering it procedurally unconscionable.

95. Fifth, Defendants waived any right to compel arbitration through bad faith conduct: ignoring Plaintiff's written disputes, failing to correct employment records after written notice, and engaging in post-termination retaliatory conduct including unauthorized background check activity.

96. Sixth, to the extent any agreement exists with Union Square Events, it does not cover claims arising from Plaintiff's employment with Bon Appétit Management Company, which is a distinct entity.

97. Defendant CultivatedNY never executed an arbitration agreement with Plaintiff because the employment offer was withdrawn before onboarding was completed. No arbitration agreement was signed. CultivatedNY's claims remain in federal court regardless of the outcome of any arbitration motion by other Defendants.

## VII. CLAIMS FOR RELIEF

### COUNT I — RETALIATION (TITLE VII, 42 U.S.C. § 2000e-3(a))

**Against All Defendants**

98. Plaintiff re-alleges and incorporates all preceding paragraphs as if fully set forth herein.

99. Plaintiff engaged in protected activity by: (a) directly objecting to Garcia-Moreno's discriminatory remark on March 28, 2025; (b) reporting discriminatory conduct to the Intuit Office Manager on April 8, 2025; (c) describing the discrimination to HR during the April 10, 2025 meeting; (d) filing an EEOC charge on May 29, 2025; (e) disclosing the EEOC charge to CultivatedNY during onboarding; (f) pursuing the EEOC charge through position statement responses and related proceedings; and (g) escalating the unresolved scheduling system access failure to Compass Group's HR Advice and Guidance function on June 17, 2025 in writing, which contemporaneously documented Plaintiff's drug test demand and placed Defendants on further notice of Plaintiff's protected activity.

100. Defendants were aware of Plaintiff's protected activity at each stage and subjected Plaintiff to adverse employment actions including termination from Bon Appétit, termination from Union Square Events, withdrawal of the CultivatedNY offer, unauthorized background checks, a sham interview process, wage reporting misrepresentations, and blocking of Plaintiff's communications.

101. The causal connection between Plaintiff's protected activity and the adverse actions is supported by temporal proximity, Garcia-Moreno's participation in adverse actions, the complete absence of prior written discipline, Defendants' failure to follow their own progressive discipline policy, and post-termination surveillance and blacklisting activity.

102. Defendants' actions constitute retaliation in violation of Title VII, 42 U.S.C. § 2000e-3(a).

### COUNT II — SEX/GENDER IDENTITY DISCRIMINATION (TITLE VII)

**Against Compass Group USA, Inc.; Bon Appétit Management Company; Union Square Events, LLC**

103. Plaintiff re-alleges and incorporates all preceding paragraphs as if fully set forth herein.

104. Plaintiff is a non-binary individual whose gender identity and preferred pronouns were known to Garcia-Moreno. Garcia-Moreno's remark — "This is why they should have

hired a real man" — constitutes direct evidence of discriminatory animus based on Plaintiff's gender identity and expression.

105. Discrimination based on gender identity and non-binary status constitutes sex discrimination under Title VII as interpreted in Bostock v. Clayton County, 590 U.S. 644 (2020).

106. Defendants violated Title VII of the Civil Rights Act of 1964.

## COUNT III — RETALIATION AND DISCRIMINATION (NYSHRL)

### Against All Defendants

107. Plaintiff re-alleges and incorporates all preceding paragraphs as if fully set forth herein.

108. The NYSHRL prohibits discrimination and retaliation based on gender identity and expression. N.Y. Exec. Law §§ 292(34), 296.

109. Defendants discriminated against Plaintiff based on gender identity and expression and retaliated against Plaintiff for engaging in protected activity. Defendants violated the New York State Human Rights Law.

## COUNT IV — RETALIATION, DISCRIMINATION, AND AIDING AND ABETTING (NYCHRL)

### Against All Defendants including The Frick Collection and Intuit, Inc.

110. Plaintiff re-alleges and incorporates all preceding paragraphs as if fully set forth herein.

111. The NYCHRL provides uniquely broad and remedial protections, requiring only that discriminatory or retaliatory conduct be a "motivating factor" in the adverse action. N.Y.C. Admin. Code § 8-107.

112. Garcia-Moreno's discriminatory remark, the subsequent hostile work environment, Plaintiff's terminations following protected activity, and the interference with subsequent employment constitute violations of the NYCHRL by the Compass Group Defendants.

113. The Frick Collection is independently liable under NYCHRL § 8-107(6). The Frick Collection exercised independent HR authority over Plaintiff, conducted an independent HR orientation for Plaintiff, received written post-termination notice of discriminatory and retaliatory conduct through its Head of Human Resources Nate Skaggs, and deliberately failed to investigate or take remedial action — constituting aiding and abetting of the discriminatory and retaliatory conduct of Union Square Events and Compass Group.

114. Intuit, Inc. aided and abetted the discriminatory and retaliatory conduct of Bon Appétit Management Company in violation of NYCHRL § 8-107(6). Intuit received direct notice of Plaintiff's gender identity discrimination complaints through its own managerial personnel one week before Plaintiff's termination, failed to act before the termination was carried out, and thereafter engaged in a six-to-seven-week delayed post-hoc response while simultaneously refusing to identify a corroborating witness with direct knowledge of Plaintiff's pre-termination discrimination complaint. Intuit's receipt of notice, its failure to act, and its refusal to identify a corroborating witness

collectively establish that Intuit aided and abetted the discriminatory and retaliatory conduct of Bon Appétit Management Company by facilitating and ratifying rather than remedying it.

## COUNT V — WILLFUL VIOLATIONS OF THE FAIR CREDIT REPORTING ACT (15 U.S.C. §§ 1681b, 1681n)

**Against Compass Group USA, Inc.; CultivatedNY; and Certiphi Screening, Inc.**

115. Plaintiff re-alleges and incorporates all preceding paragraphs as if fully set forth herein.

116. The FCRA prohibits any person from obtaining a consumer report for employment purposes without a permissible purpose and without the written consent of the consumer. 15 U.S.C. § 1681b. A willful violation exposes a defendant to statutory damages of not less than $100 nor more than $1,000 per violation, punitive damages, and attorneys' fees pursuant to 15 U.S.C. § 1681n.

117. On July 15, 2025, Compass Group initiated a Checkr background check on Plaintiff under Plaintiff's existing Compass Employee ID 10288365. Checkr confirmed in writing that this background check was unauthorized and canceled it. At the time of this pull, Plaintiff's prior written consent had been withdrawn. Compass Group had no permissible purpose to initiate a background check on a terminated employee in connection with an offer processed through its own HR infrastructure under a nominally independent brand name.

118. On July 23, 2025, a second unauthorized Checkr background check was initiated on Plaintiff. This pull occurred eight days after the first unauthorized pull and after the CultivatedNY offer had already been rescinded. No legitimate employment purpose existed for this inquiry.

119. In March 2026, an additional unauthorized background check was initiated on Plaintiff through Checkr. This pull occurred months after Plaintiff's termination from all Compass-affiliated entities and after Plaintiff had filed an EEOC charge disclosing active litigation posture.

120. On April 2, 2026, Certiphi Screening, Inc. d/b/a Application Station (Truescreen) initiated a post-termination background check on Plaintiff after Plaintiff had withdrawn consent. This pull occurred after Plaintiff's active EEOC charge was a matter of record.

121. The four unauthorized background check inquiries — spanning July 2025 through April 2026 — establish a pattern of willful noncompliance with the FCRA's consent requirements. Compass Group is a sophisticated multinational employer with dedicated HR and legal infrastructure. Its repeated initiation of background checks on a terminated employee after consent withdrawal, across multiple platforms and entity names, over a nine-month period, cannot be characterized as negligent. Each pull reflects an affirmative decision by a Compass employee with system access to run a consumer report on Plaintiff without authorization.

122. Plaintiff is entitled to statutory damages of not less than $100 nor more than $1,000 for each willful violation, punitive damages, attorneys' fees and costs pursuant to 15 U.S.C. § 1681n, and such other relief as the Court deems just and proper.

## COUNT VI — NEW YORK LABOR LAW WAGE REPORTING VIOLATIONS

## Against Compass Group USA, Inc.; Union Square Events, LLC; and Hudson Yards Catering LLC

123. Plaintiff re-alleges and incorporates all preceding paragraphs as if fully set forth herein.

124. Defendants violated New York Labor Law § 191 by failing to report wages paid to Plaintiff to the New York State unemployment insurance system for the period of Plaintiff's Union Square Events employment from May 19, 2025 through July 2, 2025, despite issuing termination paperwork under Union Square Events' FEIN and issuing Plaintiff's final paycheck directly from Compass Group's corporate payroll account.

125. Defendants' routing of Plaintiff's wages across multiple subsidiary cost centers — including Bon Appétit Management Company (cost center T070/68201), Hudson Yards Catering LLC (cost center T173/68638, FEIN 42-1651083), and Benchworks (cost center CG14/53057) — was structurally arranged to suppress Plaintiff's reportable wage base, defeat unemployment benefit calculations, and obscure the continuity of Plaintiff's employment relationship with the Compass enterprise.

126. The documented nature of this arrangement is confirmed by the DOL Record of Employment (Form IA 12.3) signed by Union Square Events General Manager Zachary Goldstein on July 16, 2025. That document bears Hudson Yards Catering's FEIN — 42-1651083 — while listing Union Square Events' Brooklyn address — 147 41st Street, Floor 4, Brooklyn, NY 11232 — as the reporting address. The use of one entity's tax identification number under another entity's address, signed by a manager of a third entity, reflects the documented architecture of a payroll fragmentation arrangement spanning multiple Compass-affiliated defendants.

127. On February 11, 2026, Compass Group provided a written admission acknowledging that Plaintiff's wages were routed through Hudson Yards Catering cost centers. That admission, combined with the DOL conflict and the corporate structure evidence, establishes that Defendants had actual knowledge of the fragmentation and maintained it with knowledge of its effect on Plaintiff's wage record.

128. As a direct result of Defendants' wage fragmentation arrangement, Plaintiff's base period wages were artificially suppressed in New York State DOL unemployment benefit calculations, resulting in reduced benefit payments. Plaintiff was deprived of accurate wage reporting required under NY Labor Law § 195, including wage statements accurately identifying the employing entity, pay rate, and applicable cost center.

129. Plaintiff seeks recovery of all suppressed wages, liquidated damages equal to the amount of unpaid wages pursuant to NY Labor Law § 198 and FLSA § 216(b), statutory penalties for wage statement violations, restitution under unjust enrichment theory for wages routed through HYC cost centers without proper disclosure, pre- and post-judgment interest, and attorneys' fees and costs.

## COUNT VII — RETALIATION AND SPOLIATION: CULTIVATEDNY / COMPASS GROUP USA, INC.

**Against Compass Group USA, Inc. and CultivatedNY (Title VII § 704(a); NYCHRL § 8-107(7); Fed. R. Civ. P. 37(e))**

130. Plaintiff re-alleges and incorporates all preceding paragraphs as if fully set forth herein.

131. On or about July 15, 2025, Plaintiff received a signed offer of employment from CultivatedNY at a rate of $27.21 per hour. That same day, a background check was initiated through Checkr — later confirmed in writing by Checkr to have been unauthorized and subsequently canceled. The offer was processed through Compass Group North America's proprietary SAP SuccessFactors CGNA onboarding system, as evidenced by onboarding emails transmitted from the no-reply.CGNA@online-onboarding.com domain. Plaintiff's onboarding profile was created under Employee ID 10288365 — the same Compass Group Employee ID assigned to Plaintiff since 2023 and used continuously across Bon Appétit, Hudson Yards Catering, and prior Compass-affiliated engagements. CultivatedNY is not an independent employer for purposes of this count. It is an entity whose hiring infrastructure was controlled by and operated through Compass Group's own systems.

132. Approximately four days after Plaintiff disclosed an active EEOC charge and raised questions regarding the arbitration clause contained in the offer documentation, the offer was rescinded. No legitimate business justification was provided. The four-day temporal proximity between Plaintiff's protected disclosure and the rescission of the offer constitutes direct evidence of retaliatory motive under both Title VII and the NYCHRL.

133. Following the rescission, Plaintiff's onboarding records were deleted from the Compass CGNA SuccessFactors system. At the time of deletion, Compass Group was on notice of Plaintiff's EEOC charge — which had been filed and disclosed to Compass prior to the deletion. The duty to preserve litigation-relevant records attached no later than the date of that disclosure. The deletion of onboarding records — including the Employee ID linkage, background check initiation data, and offer documentation stored within Compass's own HR infrastructure — constitutes willful spoliation of evidence. Plaintiff is entitled to an adverse inference instruction at trial, and to sanctions including but not limited to attorneys' fees and costs, pursuant to Federal Rule of Civil Procedure 37(e) and the Court's inherent authority.

134. Plaintiff seeks compensatory damages for lost wages at $27.21 per hour for the duration of the anticipated employment, compensatory damages for emotional distress, punitive damages under the NYCHRL, statutory and punitive damages under the FCRA, an adverse inference instruction at trial, and such other relief as the Court deems just and proper.

## COUNT VIII — IMPROPER PAYROLL FRAGMENTATION AND WAGE MISREPORTING: HUDSON YARDS CATERING LLC / COMPASS GROUP USA, INC.

**Against Hudson Yards Catering LLC and Compass Group USA, Inc. (NY Labor Law §§ 190, 193, 195, 198; FLSA 29 U.S.C. § 206; Unjust Enrichment)**

135. Plaintiff re-alleges and incorporates all preceding paragraphs as if fully set forth herein.

136. At all relevant times, Defendant Hudson Yards Catering LLC ("HYC") functioned not as an independent employer but as a mechanical payroll instrument controlled and managed by Compass Group USA, Inc. This fact is established by public record — Florida Division of Corporations filings identify Compass Group USA, Inc. as the Manager of Hudson Yards Catering LLC, sharing the same principal address at 2400 Yorkmont Road, Charlotte, NC 28217.

137. Compass Group routed Plaintiff's wages across multiple subsidiary cost centers — including Bon Appétit Management Company (cost center T070/68201), Hudson Yards Catering LLC (cost center T173/68638, FEIN 42-1651083), and Benchworks (cost center CG14/53057) — using a single Employee ID (10288365) throughout. This fragmentation was not administratively necessary. It was structurally arranged to suppress Plaintiff's reportable wage base, defeat unemployment benefit calculations, and obscure the continuity of Plaintiff's employment relationship with the Compass enterprise.

138. The deliberate nature of Defendants' 2025 wage fragmentation arrangement is conclusively established by comparison to Plaintiff's prior unemployment insurance claim. For the benefit year effective September 16, 2024, Plaintiff's wages were reported cleanly through a single entity — Benchworks — under a single FEIN, totaling $9,411.55 in base period wages. The New York State Department of Labor approved Plaintiff's claim and issued a weekly benefit rate of $154.00 without issue. At that time, Plaintiff had not filed an EEOC charge. At that time, Plaintiff had not engaged in protected activity. At that time, Compass Group reported Plaintiff's wages accurately through a single consolidated reporting channel. For the benefit year effective November 3, 2025 — after Plaintiff filed their EEOC charge on May 29, 2025, after Plaintiff was terminated from two Compass-affiliated entities, and after Plaintiff disclosed protected activity to CultivatedNY — those same wages were fragmented across six or more subsidiary FEINs, the majority reporting $0.00, causing total reported wages to fall below the qualifying threshold and resulting in an initial denial on November 5, 2025. Before protected activity: single entity reporting, total wages $9,411.55, result: APPROVED at $154.00/week. After EEOC charge filed: fragmented across 6+ subsidiaries, majority $0.00, result: DENIED. This before/after comparison, drawn entirely from Defendants' own payroll records and the New York State Department of Labor's own determinations, establishes willfulness within the meaning of NY Labor Law § 198 and supports the imposition of liquidated damages equal to 100% of all unpaid wages and benefits attributable to the fragmentation arrangement.

139. The documented nature of this arrangement is confirmed by the DOL Record of Employment (Form IA 12.3) signed by Union Square Events General Manager Zachary Goldstein on July 16, 2025. That document bears Hudson Yards Catering's FEIN — 42-1651083 — while listing Union Square Events' Brooklyn address (147 41st Street, Floor 4, Brooklyn, NY 11232) as the reporting address. The use of one entity's tax identification number under another entity's address, signed by a manager of a third entity, reflects the documented architecture of a payroll fragmentation arrangement spanning multiple Compass-affiliated entities.

140. On February 11, 2026, Compass Group provided a written admission acknowledging that Plaintiff's wages were routed through Hudson Yards Catering cost centers. That

admission, combined with the DOL conflict and the corporate structure evidence, establishes that Defendants had actual knowledge of the fragmentation and maintained it with knowledge of its effect on Plaintiff's wage record.

141. As a direct result of Defendants' wage fragmentation arrangement, Plaintiff's base period wages were artificially suppressed in New York State DOL unemployment benefit calculations, resulting in reduced benefit payments. Plaintiff was deprived of accurate wage reporting required under NY Labor Law § 195, including wage statements accurately identifying the employing entity, pay rate, and applicable cost center. Plaintiff suffered lost wages, lost benefits, and economic harm in an amount to be determined at trial.

142. IRS Versus DOL Reporting Conflict: Compass Group reported Plaintiff's 2025 wages to the Internal Revenue Service under a single consolidated W-2 bearing master FEIN 56-1874931, while simultaneously reporting those same wages to the New York State Department of Labor fragmented across five or more subsidiary FEINs as follows: Hudson Yards Catering LLC (FEIN 42-1651083) — $2,801.58 reported (Q2 2025); Bon Appétit Management Company (cost center T070/68201) — $343.68 reported (Q1 2025); Great Performances/Artists As — $0.00 reported (FEIN unknown); Compass Group USA Inc. (FEIN 56-1874931) — $0.00 reported to DOL (consolidated to IRS only); Union Square Events — $0.00 reported. Total reported to DOL across all entities: $3,145.26 — below qualifying threshold. Total reported to IRS under single consolidated W-2: $6,356.00. The $3,210.74 discrepancy between IRS-reported and DOL-reported wages for the same employment period is the direct and proximate cause of Plaintiff's initial benefit denial on November 5, 2025. Compass Group made two simultaneous and irreconcilable representations to two federal agencies regarding the same wages: consolidated to the IRS, fragmented to DOL.

143. Revised Determination and Quantified Benefits Owed: On May 5, 2026, the New York State Department of Labor issued a Revised Monetary Benefit Determination approving Plaintiff's claim on an alternate base period at a weekly benefit rate of $307.00. The claim effective date is November 3, 2025. The benefit year runs through November 8, 2026. Plaintiff has certified continuously and without interruption since November 3, 2025. As of the date of this filing, 26 weeks of certified benefits at $307.00 per week — totaling $7,982.00 — remain unpaid. Upon a finding of willful violation under NY Labor Law § 198, Plaintiff is entitled to liquidated damages equal to 100% of unpaid wages, bringing the total benefits-related damages to $15,964.00.

144. DOL Supervisor Voicemails — Documented Verbal-Only Communication: On or about April 23, 2026, DOL supervisor Robert called Plaintiff and left a voicemail — saved and preserved — advising that LL12 wage verification requests had been issued to employers on file. Bon Appétit and Solomon Page failed to respond to those LL12 requests. The Department of Labor issued its revised determination on incomplete records. On or about May 6, 2026, DOL supervisor Rebecca called Plaintiff and left a voicemail — saved and preserved, but difficult to hear due to significant background noise — advising of a response deadline of May 8, 2026 at 11:00 a.m. An unintelligible voicemail delivered with a 48-hour response window does not constitute meaningful notice of a deadline affecting Plaintiff's legal rights. On or about April 28 or May 2, 2026, a DOL representative at the Varick Street office verbally advised Plaintiff that

the claim would be paid as a lump sum of approximately $7,000.00 and that the benefit year would be exhausted. No written determination was issued. This pattern of verbal-only communication was structured in a manner that, if accepted, would have extinguished Plaintiff's appeal rights without Plaintiff's informed written consent. Plaintiff formally objected in writing on May 10, 2026.

145. Denial of Due Process — Three Unassigned Hearing Requests: Plaintiff has filed three formal hearing requests with the New York State Department of Labor: November 12, 2025 (faxed to Thomas Rose at 518-457-9492); December 16, 2025 (faxed to DOL); and April 17, 2026 (faxed to 518-457-9492). As of the date of this filing, none of the three hearing requests has been assigned, scheduled, or acknowledged. Six months without a hearing date constitutes a per se unreasonable delay and a denial of Plaintiff's procedural due process rights. NY Labor Law § 620 requires written notice of determinations enabling appeal.

## COUNT IX — DISCRIMINATORY TERMINATION, MANUFACTURED PRETEXT, DEFAMATION PER SE, AND JOINT EMPLOYER LIABILITY

**Against Union Square Events LLC, Restaurant Associates Inc., and The Frick Collection (Title VII §§ 703(a), 704(a); NYCHRL §§ 8-107(1), 8-107(6), 8-107(7); Defamation Per Se; Joint Employer Doctrine)**

146. Plaintiff re-alleges and incorporates all preceding paragraphs as if fully set forth herein.

147. On May 7, 2025, Plaintiff received a hire letter from Restaurant Associates, Inc. for a position at Westmoreland at The Frick. That letter expressly identified both Restaurant Associates and Compass Group USA, Inc. as "collectively, the Company" — establishing from the outset that the employment relationship was not limited to a single entity. On or about May 19, 2025, Plaintiff reported for onboarding conducted entirely under Union Square Events branding. Plaintiff attended two separate orientations: one conducted by Union Square Events and one conducted by The Frick Collection directly. The Frick Collection's direct participation in Plaintiff's onboarding establishes its operational control over the terms and conditions of Plaintiff's employment at Westmoreland.

148. At all relevant times, Zachary Goldstein served as General Manager of Westmoreland at The Frick Collection, a Union Square Events operation. Goldstein occupied three simultaneous roles in Plaintiff's adverse employment action: recipient of Plaintiff's written system access complaint, designated escalation contact per USE HR policy, and witness on Plaintiff's discharge report. Ryan Mills served as HR Director with authority over discipline and termination. The concentration of Goldstein's roles across complaint, escalation, and discharge created a structural conflict of interest that deprived Plaintiff of any neutral review of the adverse actions taken against them.

149. Defendants subjected Plaintiff to a pattern of manufactured disciplinary actions without legitimate basis. First, Plaintiff was issued a lateness write-up that did not accurately reflect the circumstances of Plaintiff's attendance and was a direct and foreseeable consequence of the scheduling system access failure that Goldstein had been notified of in writing and failed to correct. Second, Defendants raised an unsubstantiated allegation that Plaintiff was under the influence of drugs or alcohol during a shift on

The Frick Collection's premises. Plaintiff immediately and directly offered to submit to a drug test and breathalyzer on the spot. Defendants refused to administer either. No testing, medical evaluation, or formal investigation was conducted. Defendants thereafter relied on the unsubstantiated allegation as a basis for termination. The refusal to administer objective testing when Plaintiff had affirmatively and voluntarily offered to submit to it is inconsistent with a good faith investigation and establishes that the allegation was pretextual. Third, the counseling report issued in connection with these disciplinary actions bears a blank associate signature line — reflecting that Plaintiff was not provided a meaningful opportunity to review, respond to, or contest the disciplinary record prior to termination.

150. In or around late June 2025, Defendants Union Square Events, LLC, through its agents Zachary Goldstein and Ryan Mills, published false statements about Plaintiff to third parties, specifically: (a) that Plaintiff had made racist remarks to or about a coworker or guest; and (b) that Plaintiff had warned a manager not to be left alone with a specific female employee because she would "claim rape." Both statements are false. Plaintiff never made either statement. When Plaintiff learned of the accusations they immediately denied them in writing and offered to cooperate with any investigation. No investigation was conducted. The statements were published without reasonable investigation, without corroborating evidence, and without affording Plaintiff any opportunity to respond prior to termination. The publication of these false statements to third parties, made in connection with and as justification for Plaintiff's termination, constitutes defamation per se under New York law and an independent basis for damages separate from the discrimination and retaliation claims.

151. Plaintiff was terminated by Union Square Events management at Westmoreland at The Frick on July 2, 2025. The termination notice was issued on Compass Group letterhead, signed by Zachary Goldstein on July 16, 2025 — fourteen days after the stated termination date.

152. Plaintiff's termination from Union Square Events occurred thirty-three days after Plaintiff filed their EEOC charge on May 29, 2025. This period of temporal proximity supports a strong inference of retaliatory motive under both Title VII and the NYCHRL.

153. Restaurant Associates, Inc. is liable as a joint employer by virtue of its May 7, 2025 hire letter identifying itself and Compass Group as "collectively, the Company." Union Square Events LLC is liable as the direct supervisor and terminating entity. The Frick Collection is liable as a joint employer by virtue of its direct participation in Plaintiff's onboarding orientation, its provision of the worksite, and its operational control over the Westmoreland venue. The Frick Collection cannot disclaim employer status while simultaneously conducting its own orientation of Plaintiff and exercising control over the physical and operational environment in which Plaintiff worked. Nate Skaggs, Head of Human Resources at The Frick Collection, received formal written notice on January 21, 2026 of the pretextual drug allegation, Plaintiff's on-the-spot demand for testing, Defendants' refusal to administer that test, and the proximity of the termination to Plaintiff's active EEOC charge. Mr. Skaggs acknowledged receipt and The Frick Collection took no investigative or remedial action — constituting deliberate

indifference to documented discriminatory and retaliatory conduct occurring on its own premises.

154. Plaintiff seeks compensatory damages for lost wages and benefits, compensatory damages for emotional distress, presumed and punitive damages for defamation per se under New York law, punitive damages under the NYCHRL, back pay, front pay, and such other relief as the Court deems just and proper.

## COUNT X — DISCRIMINATORY TERMINATION, HOSTILE WORK ENVIRONMENT, RETALIATION, AND CAT'S PAW LIABILITY: BON APPÉTIT MANAGEMENT COMPANY AND INTUIT, INC.

**Against Bon Appétit Management Company and Intuit, Inc. (Title VII §§ 703(a), 704(a); NYCHRL §§ 8-107(1), 8-107(6), 8-107(7); Joint Employer Doctrine)**

155. Plaintiff re-alleges and incorporates all preceding paragraphs as if fully set forth herein.

156. On or about March 24, 2025, Bon Appétit hired Plaintiff as a Catering Attendant at The Pantry, located at the Intuit-NYC offices. Plaintiff identifies as non-binary and uses they/them pronouns. Plaintiff's gender identity and preferred pronouns were communicated to and known by Plaintiff's direct supervisor, Katy Garcia-Moreno, at the time of all events described herein.

157. On or about March 28, 2025, while Plaintiff was performing assigned work duties — specifically lifting buffet chafers — Garcia-Moreno stated words to the effect of: "This is why they should have hired a real man." This remark was made with knowledge of Plaintiff's non-binary gender identity and directed at Plaintiff based on their gender identity and expression. Plaintiff immediately objected. Garcia-Moreno dismissed the objection. Following Plaintiff's objection, Garcia-Moreno subjected Plaintiff to heightened scrutiny, micromanagement, hostility, and differential treatment not applied to other employees.

158. On or about April 8, 2025, Plaintiff reported Garcia-Moreno's discriminatory conduct to a floor manager at the Intuit location — on Intuit's premises, during assigned work hours. On or about April 9, 2025, the floor manager disclosed Plaintiff's complaint to Garcia-Moreno — the very individual whose conduct Plaintiff had reported. This disclosure of Plaintiff's protected complaint to its subject constitutes a failure of basic complaint handling protocol and an independent act of retaliation.

159. Intuit's Office Manager received Plaintiff's protected disclosure on April 8, 2025 and took no action to ensure the complaint was investigated or remediated. Intuit's Ethics and Investigations department, through Dorna Zaboli, confirmed in writing on June 9, 2025 that Intuit had transmitted Plaintiff's complaint to Bon Appétit on May 30, 2025 — more than six weeks after the protected disclosure — by which time Plaintiff had already been terminated. Intuit's failure to act within a reasonable time after receiving notice of discrimination on its own premises constitutes aiding and abetting under NYCHRL § 8-107(6).

160. Intuit's operational integration with Bon Appétit is established by: Garcia-Moreno's dual email addresses — one on Bon Appétit's domain and one on Intuit's corporate domain — demonstrating shared management infrastructure inconsistent with an arm's-

length client relationship; the termination letter signed by Niasia Johnson under the designation "Bon Appétit — Intuit NYC" — establishing that the termination was executed under joint institutional authority; and Intuit's on-site team's issuance of direct operational instructions to Plaintiff, which Garcia-Moreno deferred to, establishing Intuit's supervisory control over Plaintiff's day-to-day work.

161. The suspension notice was signed by Gary Gibson — an individual who had no direct relationship with Plaintiff and who had never met Plaintiff. Under the cat's paw theory of liability, where a biased subordinate influences or sets in motion an adverse employment action that is then rubber-stamped by a decisionmaker with no independent knowledge of the employee, the employer remains liable for the subordinate's discriminatory motive. See Staub v. Proctor Hospital, 562 U.S. 411 (2011). Garcia-Moreno's discriminatory animus, documented by their March 28 remark and subsequent retaliatory conduct, was the proximate cause of the suspension and termination regardless of whether Gibson or Rotundo harbored independent discriminatory intent. Defendants cannot shield themselves from liability by routing the adverse action through a signatory with no firsthand knowledge of Plaintiff.

162. Plaintiff was suspended on April 10, 2025 and terminated on April 15, 2025. The termination letter was signed by Garcia-Moreno and issued under the Bon Appétit — Intuit NYC designation. The adverse actions followed directly from Plaintiff's protected disclosures, establishing retaliatory motive.

163. Plaintiff seeks compensatory damages for lost wages and benefits, compensatory damages for emotional distress, punitive damages under the NYCHRL, back pay, front pay, and such other relief as the Court deems just and proper.

## COUNT XI — POST-FILING RETALIATION: MISCONDUCT MISREPRESENTATION TO NEW YORK STATE DEPARTMENT OF LABOR

**Against Compass Group USA, Inc., Union Square Events LLC, and Hudson Yards Catering LLC (Title VII § 704(a); NYCHRL § 8-107(7); NY Labor Law § 594; Post-Filing Retaliation)**

164. Plaintiff re-alleges and incorporates all preceding paragraphs as if fully set forth herein.

165. The Misconduct Designation — Coordinated Post-Filing Retaliation: On May 5, 2026, the New York State Department of Labor issued a favorable revised determination approving Plaintiff's unemployment claim at $307.00 per week on an alternate base period. Within forty-eight hours, on May 7, 2026 — twenty-eight days after Plaintiff filed the original federal complaint in this action — three employers filed simultaneous separation reports with the New York State Department of Labor, all claiming discharge for reasons other than lack of work, all bearing the same effective date of March 30, 2026, and all mailed on the same date: (1) Compass Group USA, Inc. (ER No. E78-61671 6); (2) Hudson Yards Catering LLC (ER No. E47-50866 9); and (3) Great Performances/Artists As (ER No. E66-21348 9). The cover letters stated a seven-calendar-day response window, making the actual deadline May 14, 2026. DOL's system generated a May 8, 2026 deadline — one day after mailing — making timely response functionally impossible. On May 15, 2026, DOL issued Notices of Determination finding misconduct-based discharge against Plaintiff based solely on

employer submissions, without considering Plaintiff's portal submissions dated May 10 and May 14, 2026, and without returning Plaintiff's same-day callbacks to DOL Agent Rebecca on May 15, 2026. The Compass Group and Hudson Yards Catering determinations are word-for-word identical — the same fabricated narrative submitted under two entity names. Both cite June 13, 2025 as the misconduct date — a date that is sixty days after Plaintiff's actual April 15, 2025 termination and that corresponds to a fabricated 'last day worked' date Compass Group entered into Experian's Verification of Income and Employment system. Compass Group used its own falsified Experian record as the factual basis for a state agency misconduct filing. Under the integrated enterprise and single employer theories established in Section IV of this complaint — confirmed by Florida Division of Corporations public filings identifying Compass Group USA, Inc. as Manager of Hudson Yards Catering LLC — the identity of the specific reporting entity does not alter Compass Group's liability. All three entities are instruments of a single employer.

166. The Underlying Allegations Are Documented Pretext: The misconduct designation submitted to the New York State Department of Labor is based on the same allegations Defendants used to terminate Plaintiff on July 2, 2025 — allegations that are documented as fabricated pretext in this complaint. Specifically: (a) an unsubstantiated allegation that Plaintiff was under the influence of drugs or alcohol, for which Plaintiff immediately demanded a drug test and breathalyzer on the spot and Defendants refused to administer either; (b) an allegation that Plaintiff offered a coworker cocaine, which was never investigated, never reduced to a formal finding, and appears on a counseling report bearing a blank associate signature line; (c) an allegation that Plaintiff made racist remarks to a coworker or guest, which Plaintiff denied in writing contemporaneously and which produced no investigation findings; and (d) an allegation that Plaintiff warned a manager not to be left alone with a specific female employee because she would 'claim rape' — a statement Plaintiff never made, denied in writing, and which Defendants never investigated. None of these allegations was substantiated. None produced documented investigation findings. None was supported by witness statements produced to Plaintiff. All four were denied by Plaintiff in writing at the time they were made.

167. Post-Filing Retaliation: Plaintiff's federal complaint was filed on April 9, 2026 and is a matter of public record in this Court. Defendants' counsel at Gardner Skelton PLLC, who received Plaintiff's settlement demand on April 10, 2026, had actual knowledge of the federal complaint and its contents — including the pleading of all four allegations as manufactured pretext — at all times after that date. The maintenance and active use of the misconduct designation to block Plaintiff's approved unemployment benefits after the filing of the federal complaint constitutes post-filing retaliation under Title VII § 704(a) and the NYCHRL. The misconduct designation is not a passive historical record — it is being actively used as of the date of this filing to block $7,982.00 in approved unemployment benefits that the New York State Department of Labor has determined Plaintiff is entitled to receive.

168. The Designation Closes the Loop on Fabricated Pretext: The misconduct designation submitted to the Department of Labor is the final link in a documented chain of retaliatory conduct: Defendants fabricated disciplinary allegations — used those

allegations to terminate Plaintiff — reported those same allegations as misconduct to a state agency — the misconduct designation blocks Plaintiff's approved benefits — Plaintiff remains without income while their federal complaint naming those allegations as pretextual is pending before this Court. Defendants cannot simultaneously maintain in federal court that the termination was legitimate and submit to the New York State Department of Labor that the same conduct constitutes disqualifying misconduct — while producing zero investigation findings, zero witness statements, and zero documentation supporting either position.

169. Burden of Proof at DOL Hearing: Under NY Labor Law § 593(3) and applicable Department of Labor regulations, the burden of proving misconduct rests with the employer. Defendants must prove by a preponderance of the evidence that Plaintiff's conduct rose to the level of disqualifying misconduct. Their evidentiary record consists of: an unsigned counseling report; a drug allegation for which they refused to administer a requested test; and defamatory statements never reduced to formal investigation findings. That record does not meet the burden. Every document Defendants submit to the Department of Labor to support the misconduct designation, and every witness they present at any DOL hearing, will be subject to discovery in this federal proceeding.

170. Damages: As a direct and proximate result of the misconduct designation, Plaintiff has been denied $7,982.00 in approved unemployment benefits (26 weeks x $307.00) covering November 3, 2025 through approximately May 4, 2026, despite certifying continuously and without interruption. Upon a finding of willful violation under NY Labor Law § 198, liquidated damages equal to 100% of the blocked benefits bring the total to $15,964.00. Plaintiff further seeks compensatory damages for emotional distress, punitive damages under the NYCHRL, and such other relief as the Court deems just and proper.

171. Relief Requested: Plaintiff seeks: compensatory damages of no less than $15,964.00 representing approved unemployment benefits blocked by the misconduct designation plus statutory liquidated damages; a declaratory judgment that the misconduct designation is unsupported by competent evidence and constitutes retaliation; an injunction directing Defendants to withdraw the misconduct designation from the New York State Department of Labor's records; punitive damages under the NYCHRL; and such other relief as the Court deems just and proper.

## VIII. DAMAGES

172. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff has suffered and continues to suffer damages including: (a) lost wages and back pay from the date of each termination to the present; (b) lost future earning capacity and diminished employment opportunities, including lost employment with Levy/CultivatedNY at the documented rate of $27.21 per hour and lost employment with Union Square Events; (c) loss of unemployment insurance benefits proximately caused by Defendants' wage misreporting to the New York Department of Labor; (d) emotional distress, anxiety, and severe depression, for which Plaintiff has required and continues to require weekly psychotherapy and prescription medication since May 18, 2025, as documented by a

Verification of Treatment letter from Second Chance Counseling PLLC confirming diagnoses of Major Depressive Disorder and Generalized Anxiety Disorder; (e) reputational and career harm resulting from coordinated adverse employment communications across multiple Compass Group subsidiaries and affiliated entities; (f) statutory damages under the Fair Credit Reporting Act for each unauthorized background check procurement; and (g) presumed and punitive damages for defamation per se arising from the publication of false statements by Union Square Events agents Zachary Goldstein and Ryan Mills.

173. Plaintiff's total estimated damages, exclusive of punitive damages and attorneys' fees, range from approximately $200,000 to $500,000 or more, subject to proof at trial.

## IX. RELIEF REQUESTED

Plaintiff respectfully requests that this Court:

Award compensatory damages for lost wages, back pay, lost future earnings, and other economic harm;

Award damages for emotional distress and mental anguish;

Award punitive damages where permitted by applicable law;

Award presumed and punitive damages for defamation per se;

Award statutory damages under the Fair Credit Reporting Act, 15 U.S.C. § 1681n, for each unauthorized background check procurement;

Issue an adverse inference instruction at trial based on Compass Group's spoliation of CultivatedNY onboarding records;

Award reasonable attorneys' fees and costs pursuant to Title VII, the NYSHRL, the NYCHRL, and the FCRA;

Issue injunctive relief requiring Defendants to correct Plaintiff's wage records with the New York Department of Labor and all employment verification systems;

Grant any other relief the Court deems just and proper.

## X. JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

Anthony J. DeCarlis

Plaintiff Pro Se

246 East 77th Street, Apt. 7B

New York, New York 10075

(917) 701-2989

anthony@cleartherecords.com

SDNY Case No. 1:26-cv-02950-UA


Dated: _____

---

## EXHIBIT INDEX

The following exhibits are incorporated by reference into this First Amended Complaint:

Exhibit USE-1: Associate Counseling Report dated July 1, 2025 — signed by Human Resources Director Ryan Mills, witnessed by General Manager Zachary Goldstein of Westmoreland at The Frick Collection, "Discharge" checked, blank associate signature and response sections

Exhibit USE-2: Plaintiff's June 7, 2025 email to Zachary Goldstein reporting employee login and scheduling system access failure

Exhibit USE-3: Compass Group Support Work Order WO0000001478341 — June 9, 2025 submission regarding former employee ID 10288365 remaining active in Compass systems

Exhibit USE-4: Compass Group HR Advice and Guidance written response — closing case without resolution and directing Plaintiff to escalate to Zachary Goldstein

Exhibit USE-5: Plaintiff's June 17, 2025 email to Goldstein and Union Square Events personnel — documenting drug test demand, requesting investigation findings

Exhibit C-1: CultivatedNY/Levy Offer Letter dated July 15, 2025 ($27.21/hr)

Exhibit C-2: CultivatedNY/Levy CGNA SuccessFactors Onboarding Email — no-reply.CGNA@online-onboarding.com domain

Exhibit C-3: Checkr written confirmation of unauthorized and canceled July 15, 2025 background check

Exhibit A: Compass Group/Restaurant Associates Offer Letter dated May 7, 2025 — "collectively, the Company" language

Exhibit B: Emily Lew email — USE/Frick signature block dated May 28, 2025

Exhibit C: Zachary Goldstein termination email — USE/Frick signature block

Exhibit D: NY DOL Record of Employment — Union Square Events name, FEIN 42-1651083, Brooklyn address, Goldstein signature July 16, 2025

Exhibit E: NY State Notice of Termination — Compass Group letterhead, signed Zachary Goldstein

Exhibit F: NY DOL Monetary Benefit Determination — $0 wages from USE and Compass Group

Exhibit G: Compass Group Payroll Team email — wage routing admission dated February 11, 2026

Exhibit G-2: Florida Division of Corporations filing — Compass Group USA, Inc. listed as Manager of Hudson Yards Catering LLC

Exhibit H: Compass Group USA, Inc. payroll check dated July 3, 2025 — $1,032.82

Exhibit I: TD Bank statements — COMPASS GROUP PAYROLL 10288365 ACH deposits

Exhibit J: Plaintiff's January 21, 2026 email to Nate Skaggs and acknowledgment

Exhibit K: Plaintiff's February 4, 2026 email to Nate Skaggs and acknowledgment

Exhibit L: Restaurant Associates Interview Coordination email chain July 17–31, 2025

Exhibit M: Compass Group mail server bounce — Access Denied — February 2, 2026

Exhibit N: Jennifer Otis/Gardner Skelton letter dated January 6, 2026

Exhibit O: Plaintiff's Formal Rebuttal email dated February 4, 2026

Exhibit P: Niasia Johnson May 8, 2025 email — acknowledgment of frustration and distress

Exhibit Q: Bon Appétit Termination Letter dated April 15, 2025 — "Bon Appétit — Intuit NYC" designation

Exhibit R: Katy Garcia-Moreno dual email addresses — @cafebonappetit.com and @intuit.com

Exhibit S: Dorna Zaboli, Intuit Ethics & Investigations email dated May 30, 2025

Exhibit S-2: Email chain dated June 4, 2025 — Plaintiff request for Intuit Office Manager identity

Exhibit S-3: Dorna Zaboli, Intuit Ethics & Investigations email dated June 9, 2025

Exhibit T: Plaintiff's April 15, 2025 email to Niasia Johnson — Intuit Office Manager approached Plaintiff

Exhibit U: Administrative Leave Notice dated April 10, 2025 — signed by Garcia-Moreno, Rotundo, Gibson, and Johnson

Exhibit V: Second Chance Counseling PLLC Verification of Treatment Letter — Major Depressive Disorder and Generalized Anxiety Disorder, treatment commenced May 18, 2025

Exhibit W: Checkr background check portal — Compass Group July 23, 2025 unauthorized pull

Andray Deront    July 1, 2026

8:25

## Closure+Notice-NR...



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

New York District Office
33 Whitehall St, 5th Floor
New York, NY 10004
(929) 506-5270
Website: www.eeoc.gov

### NOTICE OF RIGHT TO SUE (ISSUED ON REQUEST)
(This Notice replaces EEOC FORMS 161, 161-A & 161-B)

Issued On: 06/22/2026

To: Dr. Anthony J. Decarlis
246 east 77 st
NEW YORK, NY 10075
Charge No: 520-2026-05090

EEOC Representative and email:    RICHARD MCCRAE
INVESTIGATOR
RICHARD.MCCRAE@EEOC.GOV

### NOTICE OF RIGHT TO SUE (ISSUED ON REQUEST)

The EEOC has granted your request that the agency issue a Notice of Right to Sue, where it is unlikely that EEOC will be able to complete its investigation within 180 days from the date the charge was filed.

The EEOC is terminating its processing of this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice that the EEOC has dismissed your charge and has issued you notice of your right to sue the respondent(s) on this charge. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of EEOC's official notice of dismissal.** You should keep a record of the date you received the EEOC's official notice of dismissal. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign-in to the EEOC Public Portal and upload the court complaint to charge 520-2026-05090.

On behalf of the Commission,

Digitally Signed By:Arlean Nieto
06/22/2026
Arlean Nieto
Acting District Director

Cc:
Alexis Sandler
1 East 70th Street
New York, NY 10021

The Frick Collection
1 East 70 st
NYC, NY 10021

Please retain this Notice for your records.



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

New York District Office
33 Whitehall St, 5th Floor
New York, NY 10004
(929) 506-5270
Website: www.eeoc.gov

## NOTICE OF RIGHT TO SUE (ISSUED ON REQUEST)
(This Notice replaces EEOC FORMS 161, 161-A & 161-B)

Issued On: 06/09/2026

**To:** Mr. Anthony J. Decarlis
246 east 77 st
NEW YORK, NY 10075
Charge No: 520-2026-06132

EEOC Representative and email:    RICHARD MCCRAE
INVESTIGATOR
RICHARD.MCCRAE@EEOC.GOV

### NOTICE OF RIGHT TO SUE (ISSUED ON REQUEST)

The EEOC has granted your request that the agency issue a Notice of Right to Sue, where it is unlikely that EEOC will be able to complete its investigation within 180 days from the date the charge was filed.

The EEOC is terminating its processing of this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice that the EEOC has dismissed your charge and has issued you notice of your right to sue the respondent(s) on this charge. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of EEOC's official notice of dismissal.** You should keep a record of the date you received the EEOC's official notice of dismissal. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign-in to the EEOC Public Portal and upload the court complaint to charge 520-2026-06132.

On behalf of the Commission,

Digitally Signed By:Arlean Nieto
06/09/2026
Arlean Nieto
Acting District Director

Cc:
NA NA
148 Lafayette Street
New York, NY 10013

B H
Bhamilton@resturantassoicates.com

Please retain this Notice for your records.



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

New York District Office
33 Whitehall St, 5th Floor
New York, NY 10004
(929) 506-5270
Website: www.eeoc.gov

**NOTICE OF RIGHT TO SUE (ISSUED ON REQUEST)**
(This Notice replaces EEOC FORMS 161, 161-A & 161-B)

Issued On: 06/08/2026

**To:** Dr. Anthony J. Decarlis
246 east 77 st
NEW YORK, NY 10075
Charge No: 520-2026-05095

EEOC Representative and email:   RICHARD MCCRAE
INVESTIGATOR
RICHARD.MCCRAE@EEOC.GOV

---

### NOTICE OF RIGHT TO SUE (ISSUED ON REQUEST)

The EEOC has granted your request that the agency issue a Notice of Right to Sue, where it is unlikely that EEOC will be able to complete its investigation within 180 days from the date the charge was filed.

The EEOC is terminating its processing of this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice that the EEOC has dismissed your charge and has issued you notice of your right to sue the respondent(s) on this charge. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of EEOC's official notice of dismissal.** You should keep a record of the date you received the EEOC's official notice of dismissal. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign-in to the EEOC Public Portal and upload the court complaint to charge 520-2026-05095.

On behalf of the Commission,

Digitally Signed By:Arlean Nieto
06/08/2026
Arlean Nieto
Acting District Director

Cc:
CultivatedNY
655 West 34th Street
NEW YORK, NY 10001

Please retain this Notice for your records.

7:03  It's A Man   •                                          5G 95

← **Closure+Notice-NR...**   🔍   A+   ⋮



## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

New York District Office
33 Whitehall St, 5th Floor
New York, NY 10004
(929) 506-5270
Website: www.eeoc.gov

### NOTICE OF RIGHT TO SUE (ISSUED ON REQUEST)
(This Notice replaces EEOC FORMS 161, 161-A & 161-B)

Issued On: 06/08/2026

To: Anthony DeCarlis
246 east 77 street
NEW YORK, NY 10075
Charge No: 520-2026-05752

EEOC Representative and email:    RICHARD MCCRAE
INVESTIGATOR
RICHARD.MCCRAE@EEOC.GOV

### NOTICE OF RIGHT TO SUE (ISSUED ON REQUEST)

The EEOC has granted your request that the agency issue a Notice of Right to Sue, where it is unlikely that EEOC will be able to complete its investigation within 180 days from the date the charge was filed.

The EEOC is terminating its processing of this charge.

#### NOTICE OF YOUR RIGHT TO SUE

This is official notice that the EEOC has dismissed your charge and has issued you notice of your right to sue the respondent(s) on this charge. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of EEOC's official notice of dismissal.** You should keep a record of the date you received the EEOC's official notice of dismissal. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign-in to the EEOC Public Portal and upload the court complaint to charge 520-2026-05752.

On behalf of the Commission,

Digitally Signed By:Arlean Nieto
06/08/2026
Arlean Nieto
Acting District Director

Cc:
Intuit Inc.
51 Astor place
NEW YORK, NY 10003

Please retain this Notice for your records.

III        O        ‹

4:58                              SOS 📶 🔋

X        Right to sue.png                   💬   •••

U.S. F  Screenshots & recordings  SSION
                                            / York District Office
                                            Whitehall St, 5th Floor
                                            New York, NY 10004
                                            (929) 506-5270
                                            Website: www.eeoc.gov


**NOTICE OF RIGHT TO SUE (ISSUED ON REQUEST)**
(This Notice replaces EEOC FORMS 161, 161-A & 161-B)

Issued On: 02/10/2026

To: Anthony DeCarlis
    246 east 77 street Apt. 7B
    New York, NY 10075
Charge No: 520-2025-05326

EEOC Representative and email:  RICHARD MCCRAE
                                INVESTIGATOR
                                RICHARD.MCCRAE@EEOC.GOV

---

**NOTICE OF RIGHT TO SUE (ISSUED ON REQUEST)**

The EEOC has granted your request for a Notice of Right to Sue, and more than 180 days have passed since the filing of this charge.

The EEOC is terminating its processing of this charge.

**NOTICE OF YOUR RIGHT TO SUE**

This is official notice that the EEOC has dismissed your charge and has issued you notice of your right to sue the respondent(s) on this charge. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of EEOC's official notice of dismissal.** You should keep a record of the date you received the EEOC's official notice of dismissal. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign-in to the EEOC Public Portal and upload the court complaint to charge 520-2025-05326.

On behalf of the Commission,

Digitally Signed By:Arlean Nieto
02/10/2026
Arlean Nieto
Acting District Director

Cc:
Danielle Clark
3746 N Davidson Street
Charlotte, NC 28205

NA NA
Cafe bon appetit
51 ASTOR PL
NEW YORK, NY 10003

Jennifer Otis
3746 N Davidson Street
Charlotte, NC 28205

Cristina Licari
2400 Yorkmont Rd.
Charlotte, NC 28217

Nicole Gardner
3746 N Davidson Street
Charlotte, NC 28205

Please retain this Notice for your records.